UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | **ECF CASE**<br><br>09 Civ. 4346 (PGG)<br><br>**ORDER**<br><br>USDS SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 1/12/10 |

PAUL G. GARDEPHE, U.S.D.J.:

On November 25, 2009, this Court issued a Memorandum Opinion and an accompanying Order that, inter alia, provides for the pro rata distribution of the remaining assets of the Primary Fund and enjoins all claims against (1) Primary Fund assets, including shareholder claims against the Primary Fund; and (2) any of the Defendants and any of the Defendants' officers, directors, trustees, representatives, agents or employees to the extent that such claims are subject to indemnification by the Primary Fund.

The November 25 Opinion also provides that distributions made to "straddler" investors – those who were permitted to redeem a portion of their shares at a $1.00 NAV on September 15, 2008 – "should be offset such that their total per share recovery does not exceed that of any other investor participating in the final pro rata distribution. This offset is applicable

only where the specific party that received payment on September 15, 2008, is identical to the party participating in the final distribution." Nov. 25 Order ¶ 2(b) (Dkt. No. 202).

The November 25 Opinion further provides that investors who bought Primary Fund shares after 3:00 p.m. on September 16, 2008 – the point after which the Fund's announced NAV fell below $1.00 per share – will receive no more in the pro rata distribution than that investor paid per share. Nov. 25 Order ¶ 2(a).

On December 22, 2009, this Court received a letter from Christopher J. Clark, counsel for Defendants Reserve Management Company, Inc. ("RMCI"), Resrv Partners, Inc., Bruce R. Bent, Sr., and Bruce R. Bent II. The December 22 letter outlines a number of issues that have arisen as RMCI prepares to implement the distribution of Primary Fund assets, and makes recommendations as to how these issues should be resolved.

On December 23, 2009, this Court issued an order directing all parties wishing to address the substance of Mr. Clark's letter to submit responses no later than December 31, 2009. The Commission and several claimants to Fund assets made submissions, and on January 4, 2010, Defendants submitted a second letter addressing these issues. On the basis of these submissions, and all the proceedings to date, this Court makes the rulings set forth below.

## I. TREATMENT OF STRADDLER INVESTORS HOLDING INSUFFICIENT FUND ASSETS TO PERMIT RECAPTURE OF THE APPROPRIATE OFFSET

The first issue raised in the December 22 letter is the treatment of straddler investors who "no longer have sufficient funds to recapture the amounts contemplated" in the offset provision of the November 25 Opinion. (Def. Dec. 22 Ltr. 1-2) Defendants propose to apply the remaining funds in these investors' accounts toward the straddler offset but not to attempt to "claw back" any prior distributions made to these investors. (Def. Dec. 22 Ltr. 2) The Commission endorses this proposal (SEC Ltr. 3), which is consistent with the November 25

2

Opinion. See Nov. 25 Opinion at 41-44 (Dkt. No. 201). Accordingly, it is hereby ORDERED that where the balance remaining in a straddler investor's account is insufficient to fully satisfy the offset required by the November 25 Opinion, the offset is to be applied to the available amount and that amount is to be put toward the pro rata distribution, but no effort shall be made to "claw back" any prior distributions.

## II. TREATMENT OF STRADDLER INVESTORS WHO ARE CUSTOMERS OF OMNIBUS RETAIL BROKERS AND BANKS

Defendants' December 22 letter raises an issue concerning treatment of straddler investors who are customers of omnibus retail brokers and banks. RMCI's relationships are with the intermediary omnibus brokers or banks and not with the customers of these institutions (Def. Dec. 22 Ltr. 2), and RMCI claims to have no way of determining which underlying individual account should be subjected to the straddler offset, given that its information is all at the level of the intermediary. Id. Defendants also indicate that the amount of money at stake is relatively small, representing that if the straddler offset were applied to these accounts it would yield approximately $474,165 in additional funds to be put toward the pro rata distribution. Id. In an effort to avoid delay and expense, Defendants propose to exempt omnibus accounts from the straddler offset and to permit all omnibus investors to recover a pro rata share of the distribution of Primary Fund assets. Id. at 2-3.

The Commission contends that this proposal is inequitable because it would exempt a subset of straddler investors from the offset the Court ordered in its November 25 Opinion. (SEC Ltr. 1-3) The Commission is also concerned that exempting omnibus investors from the straddler offset would dramatically reduce the amount of the final offset that will be applied to the pro rata distribution. Id. at 2. Several claimants echo the Commission's objection. See E*Trade Ltr. 2; Mt. Vernon Trust Ltr. 2; Univision Ltr. 2. The Commission notes, however,

3

that "[t]he critical inquiry at this stage is whether RMCI (or anyone else on the Primary Fund's behalf) can create a reliable list of beneficial owners that can be used to carry out the Court's Order as it pertains to straddlers, and, if so, at what cost and what delay." Id. at 3. The Commission further states that "[i]t may be that the costs involved in determining the beneficial owner straddlers would exceed the benefit achieved by offsetting their distribution by the amount they received." This comment is in large part echoed by claimants IBM, Lazard Frères, Lazard Group, Qualcomm and FLO TV. (IBM et al Ltr. 2)

In response, the Defendants outline in their January 4 letter the "enormous logistical problems" that would result from attempting to apply the straddler offset to shareholders who invested through omnibus accounts. (Def. Jan. 4 Ltr. 2) Defendants would, they contend, be required to "determine which of its customers are holding shares for other beneficial owners" and to "obtain information from each bank and broker sufficient to not only identify the beneficial owner, but also to track and analyze all transactions (including those relating to stocks, bonds, dividends, etc. undertaken by that beneficial owner." Id. at 2-3. This process could, Defendants estimate, take as long as five to six months and cost "many hundreds of thousands, if not millions of dollars."

This Court requires additional information concerning this issue. In particular, Defendants are directed to submit a letter to this Court by 5:00 p.m. on January 14, 2010, discussing how they determined that only $474,165 would be lost from the total straddler offset if omnibus investors were exempted, and providing a more specific accounting of what costs and delays would result from attempting to create a reliable list of beneficial owners who invested through omnibus accounts. This Court will review the submissions and then rule on this issue as expeditiously as possible.

## III. TREATMENT OF STRADDLER INVESTORS WHO SUCCESSFULLY REDEEMED AFTER SEPTEMBER 15, 2008

The third issue Defendants raise is the treatment of straddler investors who successfully redeemed after September 15, 2008. The November 25 Opinion and Order defines "straddlers" as "investors who were paid by the Primary Fund for a portion of their shares at a $1.00 NAV on September 15, 2008." Nov. 25 Order ¶ 2(b). Defendants now indicate that some investors redeemed a portion of their shares after September 15. (Def. Dec. 22 Ltr. 3) The intention of the November 25 Opinion and Order was to offset the recovery of investors who redeemed a portion of their investments at a $1.00 NAV and who will now take part in the pro rata distribution. See Nov. 25 Opinion at 28-29. Treating similarly all investors who redeemed their shares at a $1.00 NAV after September 15, 2008 is, as Defendants suggest, consistent with that intent. Accordingly, it is hereby ORDERED that the straddler offset provided for in Paragraph 2(b) of the November 25 Order applies to all investors who were permitted to redeem their Primary Fund shares at a $1.00 NAV on or after September 15, 2008.

## IV. TREATMENT OF INVESTORS WHO MADE SERVICE TRANSACTION WITHDRAWALS

The fourth issue raised in the December 22 letter is whether investors who redeemed portions of their shares via "service transaction withdrawals" should be treated as straddlers in carrying out the pro rata distribution. Service transaction withdrawals are relatively small and are typically used to pay ordinary expenses. (Def. Dec. 22 Ltr. 3) When redemptions were frozen on September 15, 2008, an exception was made that allowed such withdrawals to continue to be processed in amounts up to $10,000 per account. Id. These withdrawals amount to $16.5 million redeemed from the Fund. Id. Defendants suggest that investors who made service transaction withdrawals after September 15, 2008, not be considered straddlers for

5

purposes of the pro rata distribution. Id. The Commission consents to this proposal, provided that this exception does not apply to any investor whose withdrawals exceed $10,000 in aggregate. (SEC Ltr. 4)

Adopting this proposal, with the Commission's suggested proviso, is appropriate given the de minimis effect of these transactions. Accordingly, it is hereby ORDERED that investors who made service transaction withdrawals on or after September 15, 2008, and whose withdrawals do not exceed $10,000 in the aggregate, will not be considered straddlers for purpose of the pro rata distribution.

## V. TREATMENT OF INVESTORS WHO PURCHASED SHARES AFTER 3:00 P.M. ON SEPTEMBER 16, 2008

Defendants' December 22 letter also raises an issue concerning the treatment of investors who purchased shares in the Primary Fund after 3:00 p.m. on September 16, 2008 – the point at which the Fund's announced NAV fell to $0.97 per share. See Nov. 25 Opinion at 8. In its August 21, 2009 submission, the Commission proposed that "investors who bought Primary Fund shares after 3:00 p.m. on September 16, 2008 receive no more than the amount paid . . . for each share purchased" so as not to "create a windfall for investors who purchased shares of the Primary Fund for less than the amount they would receive in a pro rata distribution." (SEC Aug. 21 Br. 21, App. ¶ 1(c)) The Court adopted this proposal in the November 25 Opinion and Order. See Nov. 25 Opinion at 27-28; Nov. 25 Order ¶ 2(a).

The assumption underlying this determination was that investors who purchased after 3:00 p.m. on September 16, 2008 paid less than $1.00 per share. Defendants now indicate, however, that these investors in fact paid a full $1.00 per share. (Def. Dec. 22 Ltr. 4) Defendants propose that these investors be paid "the exact amount of money they paid for their

6

shares. . . ." (Def. Dec. 22 Ltr. 4) The Commission argues that these investors should receive only their pro rata share of Primary Fund assets. (SEC Ltr. 4)

The intent of the November 25 Opinion as to this point was to prevent late purchasers from receiving a windfall. The resolution Defendants propose, however, would allow these investors to recover their full purchase price at the expense of those who invested before the collapse of the Primary Fund. Those who invested in the Primary Fund after 3:00 p.m. on September 16, 2008, were aware that the Fund had suffered a huge loss from the Lehman bankruptcy and had sustained a decline in its NAV to 97 cents. To permit these investors to obtain a greater recovery than investors who purchased shares before the Lehman bankruptcy would be inequitable. Accordingly, it is hereby ORDERED that investors who purchased after 3:00 p.m. on September 16, 2008, will receive only their pro rata share of Primary Fund assets.

## VI. TREATMENT OF ZERO-BALANCE INVESTORS

The final issue raised by the December 22 letter is the treatment of so-called "zero balance investors." These investors "redeemed the entire balance of their holdings in the Primary Fund on September 15th or 16th, but thereafter purchased a new position in the Primary Fund." (Def. Dec. 22 Ltr. 4-5) These investors are, essentially, both straddlers and late purchasers. Defendants propose to treat them the same as all those who purchased after 3:00 p.m. on September 16, 2008. (Def. Dec. 22 Ltr. 5) The Commission argues that Defendants have not provided enough information about these investors to suggest what treatment is appropriate. (SEC Ltr. 4) This Court disagrees. As several claimants suggest, these investors are no different than other straddlers. See E*Trade Ltr. 2; Mt. Vernon Trust Ltr. 3; Univision Ltr. 3. They redeemed their shares at a $1.00 NAV and will now "participate in the equitable relief ordered by this Court." See Nov. 25 Opinion at 28. To exempt such investors from the

7

straddler offset merely because they fully redeemed their investment at a $1.00 NAV on September 15 or 16, and then invested anew in the Fund, would be inequitable. Accordingly, it is hereby ORDERED that "zero-balance investors" will be subject to the straddler offset as set forth in the November 25 Opinion and Order. See Nov. 25 Order ¶ 2(b).

Dated: New York, New York
      January 12, 2010

SO ORDERED.

*Paul A. Randolph*

Paul G. Gardephe
United States District Judge