| | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: __9/12/12__ |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | |
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RESERVE MANAGEMENT COMPANY, INC., RESRV PARTNERS, INC., BRUCE BENT SR., and BRUCE BENT II,<br><br>Defendants,<br><br>and<br><br>THE RESERVE PRIMARY FUND,<br><br>Relief Defendant. | **ECF CASE**<br><br>**ORDER**<br><br>09 Civ. 4346 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

This order addresses the Commission's motion in limine No. 4, which asks the Court to preclude Defendants from relying on an advice of counsel defense at trial. The Commission first raised this issue in a December 16, 2011 motion, filed after cross-motions for summary judgment motions were fully briefed. (Dkt. No. 439) In a March 28, 2012 bench ruling denying the cross-motions for summary judgment, the Court reserved decision on the Commission's motion to preclude Defendants' advice of counsel defense. (March 28, 2012 Tr. at 4-5) The parties have submitted additional briefing concerning this issue, which is now ripe for resolution, with the matter set for trial on October 1, 2012.

In seeking to preclude Defendants from relying on an advice of counsel defense, the Commission argues that Defendants have not fully complied with their discovery obligations

concerning the advice they received on matters about which the attorney-client privilege has been waived. In particular, the Commission contends that Defendants should have disclosed bankruptcy advice they received from Kelley Drye & Warren. (SEC MIL No. 4 Br. at 3-9) The Commission further argues that Defendants could not have reasonably relied on advice obtained from RMCI's general counsel and from Willkie Farr & Gallagher ("Willkie"), because both the general counsel and Willkie were not disinterested. (Id. at 12-15) As to Willkie, the Commission notes that Defendants have sued that firm for malpractice, contending that it had a conflict of interest in representing both the Primary Fund and RMCI.[1] See Dec. 16, 2011 Birnbaum Decl., Ex. J (Complaint in Reserve Management Company, Inc. v. Willkie Farr & Gallagher LLP et al., Dkt. No. 11 Civ. 7045).

Finally, the Commission contends that Defendants must produce certain legal memoranda prepared by Wilmer Cutler Pickering Hale & Dorr ("Wilmer"). Defendants sought litigation advice from Wilmer in the weeks following the collapse of the Primary Fund. In mid-October 2008, Wilmer lawyers interviewed two Willkie lawyers – Joel Goldberg and Rose DiMartino – about advice they had provided to Defendants on September 15 and 16, 2008. Wilmer lawyers prepared memoranda concerning these interviews (the "Wilmer Memos") and provided copies of these memoranda to Willkie. (Dec. 16, 2011 SEC Advice of Counsel Br. 4 (citing Dec. 16, 2011 Birnbaum Decl., Ex. C (Willkie Answer) at 3 n.1)) The Commission argues that the work-product privilege as to these memoranda was waived when Wilmer shared

---

[1] How much benefit Defendants will derive from a defense premised on Willkie's advice is unclear. In its answer in the malpractice action, Willkie pleads that it "specifically advised RMCI that it would constitute fraud if RMCI promised investors that it would support the NAV of the Primary Fund and did not intend to follow through on that promise. Notwithstanding that sound advice, RMCI went ahead and made such promises to investors anyway. RMCI has only itself to blame for any consequences flowing from such statements." (Dec. 16, 2011 Birnbaum Decl., Ex. C (Willkie Answer) at 3) (emphasis in original).

2

them with Willkie. The Commission contends that Wilmer should have known that Willkie was adverse to Defendants at the time. (Id. at 13-16)

For the reasons stated below, the Commission's motion will be denied in its entirety.

I.  **DEFENDANTS WILL BE PERMITTED TO RELY ON AN ADVICE OF COUNSEL DEFENSE**

In a January 30, 2009 letter, Wilmer – then litigation counsel to Defendants – informed the SEC that

> RMCI has made a limited waiver of attorney client privilege concerning communications with its in-house counsel and its outside counsel, Willkie Farr & Gallagher LLP ("Counsel"), on two subjects: (1) advice that Counsel provided RMCI on September 15-16, 2008 regarding communications with the public; and (2) advice that Counsel provided to RMCI on September 15, 2008 regarding a proposed credit support agreement for the Primary Fund.

(July 23, 2012 Brown Decl., Ex. A (Jan. 30, 2009 Martin Ltr.)) In a September 24, 2010 email, Defendants informed the Commission that their advice of counsel defense is co-extensive with the scope of the attorney client privilege waiver set forth in Wilmer's January 30, 2009 letter. (Dec. 30, 2011 Jacobs Decl., Ex. F (Dellaportas Sept. 20, 2010 email to Birnbaum)). Defendants now seek to introduce at trial the advice they received from Willkie and from Catherine Crowley, RMCI's general counsel, concerning the two matters set forth in Wilmer's January 30, 2009 letter.

Beginning in 2002, RMCI retained Willkie to provide "general advice" on "securities law matters," and a number of Reserve funds, including the Primary Fund, retained Willkie to "assist in the preparation of various regulatory filings . . . and such other matters as you and we may agree from time to time." Willkie's representation of RMCI ended in April 2009; Willkie's representation of the Primary Fund continued. (Bent II Decl. in Opposition to

3

SEC's Motion to Preclude Advice of Counsel Defense at ¶¶ 3-4, Exs. A, B) After Lehman Bros. announced on September 14, 2008, that it would file a bankruptcy petition on September 15, 2008, Willkie began providing litigation advice to RMCI, related entities, and members of the Bent family concerning the ramifications of the Lehman bankruptcy. The firm also represented Bent Sr. and Bent II "in connection with the SEC investigation, state investigations, and related shareholder proceedings." (Bent II Decl. ¶ 4, Ex. C) As noted above, RMCI has since brought a malpractice action against Willkie (Dkt. No. 11 Civ. 7045), in which it claims that Willkie had a conflict of interest in jointly representing the Primary Fund and RMCI.

### A. Legal Standard

"Good faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to scienter in securities fraud cases," S.E.C. v. Caserta, 75 F.Supp.2d 79, 94 (E.D.N.Y. 1999) (citations omitted). Such "good faith reliance" is "not a complete defense, [however,] but only one factor for consideration." Markowski v. S.E.C., 34 F.3d 99, 105 (2d Cir. 1994); accord Howard v. S.E.C., 376 F.3d 1136, 1147-48 (D.C. Cir. 2004)).

"In order to establish the affirmative defense of advice of counsel, a defendant must show (1) that he made a complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions; (3) received advice that his conduct was legal; and (4) relied on such advice in good faith." S.E.C. v. O'Meally, No. 06 Civ 6483(LTS)(RLE), 2010 WL 3911444, at *4 (S.D.N.Y. Sept. 29, 2010) (citing Markowski v. SEC, 34 F.3d 99, 104-05 (2d Cir. 1994). "The counsel consulted must be disinterested and independent." Id. (citing C.E. Carlson, Inc. v. SEC, 859 F.2d 1429, 1436 (10th Cir. 1988)).

"'[A] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel

4

defense.'" Arista Records LLC v. Lime Grp. LLC, No. 06 CV 5936(KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) (quoting Vicinanzo v. Brunschwig & Fils, Inc., 739 F.Supp. 891, 894 (S.D.N.Y. 1990).); accord, In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

### B.   Analysis

#### 1.   Alleged Failure To Meet Discovery Obligations

The Commission first argues that Defendants have not complied with their discovery obligations concerning the two topics that are the subject of their privilege waiver. The Commission contends that RMCI's general counsel, Catherine Crowley, obtained bankruptcy advice from Kelley Drye on September 15 and 16, 2008, but that Defendants have blocked discovery concerning these communications. (SEC MIL No. 4 Br. at 3) The Commission further contends that the communications with Kelley Drye should have been disclosed because Defendants' public statements on September 15 and 16, 2008 "included statements about how the Lehman bankruptcy would impact the Primary Fund." (Id. at 8)

As an initial matter, the Commission has been aware of Defendants' advice of counsel defense since at least January 30, 2009, and has known about the communications between Crowley and Kelley Drye on September 15 and 16, 2008 since at least July 20, 2010, when Defendants provided a privilege log to the Commission. (Birnbaum Decl., Ex. B (Martin Jan. 30, 2009 Ltr.; Jacobs Decl., Ex. G (Privilege Log); Ex. M (Best July 30, 2010 Ltr., Ex. G at 18-27) The privilege log for September 15 and 16 is replete with references to Kelley Drye bankruptcy lawyers, including the chair of the bankruptcy department. Accordingly, it should have been obvious to the Commission, since at least July 2010, that Crowley had sought bankruptcy advice from Kelley Drye. The Commission did not challenge Defendants' non-disclosure of the Kelley Drye communications until December 2011, however. If the Commission believed that Crowley's communications with Kelley Drye fell within the privilege

waiver, this issue should have been raised with the Court during discovery – not many months after the discovery deadline.

In any event, Defendants' advice of counsel defense does not rely on any advice provided by Kelley Drye. To the contrary, Defendants represent that "Willkie alone" provided advice concerning (1) communications with the public on September 15 and 16; and (2) a possible credit support agreement. (Def. MIL No. 4 Opp. Br. at 11; see also Def. MIL No. 4 Opp. Br. at 19-20 ("The communications the SEC now seeks do not relate to either of the two topics covered by the advice of counsel defense. . . .No law firm besides Willkie gave Defendants advice on those subjects.")).

The Commission argues, however, that because Defendants' "public statements included ones about bankruptcy, no trier of fact can assess how reasonable Defendants' reliance was on Willkie's advice without knowing what Defendants had been told in their separate consultations with bankruptcy counsel." (SEC MIL No. 4 Br. at 7) There are several problems with the Commission's argument. First, the Commission has cited no public statements by Defendants that directly implicate principles of, or the application of, bankruptcy law. The Commission cites Defendants' expression of "confiden[ce] in the underlying credit strength and quality of securities in [the Reserve's] money market fund," but this and similar statements cited by the Commission do not necessarily implicate bankruptcy advice. Second, there is no indication in the record that Willkie provided bankruptcy advice to Defendants. To the contrary, Defendants maintain that they "do not purport to have relied on Willkie for bankruptcy advice." (Def. MIL No. 4 Opp. Br. at 11)[2] Accordingly, bankruptcy advice that Defendants may have

---

[2] The Commission's reliance on SEB, S.A. v. Montgomery Ward & Co., Inc., 412 F.Supp.2d 336, 348 (S.D.N.Y. 2006) is thus misplaced. In that case, the court ordered defendants to disclose advice given by an attorney concerning the "the exact issue" addressed by two other

6

obtained from Kelley Drye is simply irrelevant to the two topics about which Defendants intend to assert an advice of counsel defense – communications with the public, and the possibility of a credit support agreement that would preserve the Primary Fund's $1.00 NAV – and the Court cannot find that Defendants waived their attorney client privilege as to bankruptcy advice obtained from Kelley Drye.

### 2.     Reliance on "Interested" Counsel

As noted above, in order to present an advice of counsel defense, a defendant must demonstrate that the attorney he consulted was "disinterested and independent." O'Meally, 2010 WL 3911444, at *4 (citing C.E. Carlson, Inc., 859 F.2d at 1436). The Commission argues that neither Crowley nor Willkie was disinterested.

As to Crowley, the Commission presents no facts or argument as to why she may not be regarded as disinterested for purposes of an advice of counsel defense, and the cases cited by the Commission (see SEC MIL No. 4 Br. at 13) do not support its position. In O'Meally, 2010 WL 3911444, at *4-5, the court denied defendant's motion for summary judgment, which was based in part on an advice of counsel defense. The court noted that the defendant did "not proffer that he specifically disclosed and requested advice as to the legality of the practices challenged here." Id. at *4. The court further noted that "[a]dvice of counsel is but one factor that may be taken into account in evaluating whether one accused of fraud acted in good faith." (Id.) Finally, the court commented that Prudential – the defendant's employer – was hardly in a position to give "disinterested advice on the matter," because it "reaped significant revenues from Defendant's activity." (Id.)

---

attorneys, whose communications had been disclosed. Here, in contrast, Defendants obtained bankruptcy advice from Kelley Drye while Crowley and Willkie advised Defendants on other matters.

7

The facts and procedural posture are entirely different here: the Defendants assert that they obtained advice from Crowley about certain of the issues to be tried; the advice of counsel issue arises in the context of a motion in limine, and not in connection with a defendant's argument that he is entitled to summary judgment; and the Court is considering not what a corporate entity such as Prudential told an employee, but what advice a lawyer gave her clients. O'Meally provides no support for the Commission's position.

GTE Products Corp. v. Kennametal, Inc., 772 F.Supp. 907, 918 (W.D.Va. 1991), also cited by the Commission, likewise does not support its position. In that case, the court considered a motion for judgment as a matter of law, following a jury verdict in plaintiff's favor in a patent infringement case. Defendant argued that GTE had not demonstrated willful infringement, relying on advice provided by an in-house lawyer:

> The only legal advice offered by Kennametal to rebut the finding of willfulness is a one line opinion rendered by in-house counsel Lawrence Burns: "[i]t is not believed that either patent mentioned in Mr. Walter's letter is valid and/or infringed by your Group."

GTE Products Corp., 772 F. Supp. at 918. The Court found that "such a conclusory and unsupported statement falls far short of the required good faith advice of counsel," noting that the in-house lawyer had "rendered the opinion without having seen the file wrapper of the [patent at issue]." Id. The Commission has raised no such concerns about the advice rendered by Crowley here. In sum, the Commission has not demonstrated that Crowley was not disinterested, either as a matter of fact or as a matter of law.[3]

---

[3] To the extent that the Commission argues that, by definition, an in-house lawyer cannot be "disinterested," it has not cited law supporting that assertion. Defendants have cited law to the contrary. See Def. MIL No. 4 Opp. Br. at 16 (citing Western Electric Co. v. Stewart-Warner Corp., 631 F.2d 333, 337 (4th Cir. 1980) ("Just because an attorney is in-house counsel does not mean that his opinions are necessarily suspect. . . . [I]t cannot be said that the opinion of in-house counsel must simply be disregarded as a matter of law. The fact that the attorney was in-house counsel, of course, should be weighed along with all the other evidence in the case as to whether or not [defendant] was acting in good faith. . . .").

8

In arguing that Willkie was not disinterested, the Commission cites Papilsky v. Berndt, No. 71 Civ. 2534, 1976 WL 792, at *18-19 (S.D.N.Y. June 24, 1976), and Arthur Lipper Corp. v. SEC, 547 F.2d 171, 181-82 (2d Cir. 1976), which both involve joint representation of a mutual fund and its investment adviser. As an initial matter, neither case involves a motion to preclude an advice of counsel defense. To the contrary, an advice of counsel defense was presented in both cases, and the issue in each case was whether the advice of counsel defense required that judgment be rendered in favor of the defendant. Moreover, the conflict in each case was stark, and the defendants had strong reason to believe that their counsel was not giving disinterested advice.

In Papilsky, a derivative action, the same law firm rendered advice to a mutual fund and its adviser concerning $26 million in brokerage commissions paid to the adviser. Plaintiff claimed that the fund had violated its fiduciary duty to shareholders by failing to recapture commissions that were paid to the fund's adviser. 1976 WL 792, at *4. The fund relied on advice provided by the law firm, which had told the fund that "recapture would be a poor idea." Id. at *18. The Court concluded that the fund's advice of counsel defense failed, because the law firm "was counseling people with contrary interests" and "there were numerous indications from authoritative sources that counsel's advice should not have been treated as dispositive." Id.

In Lipper, a broker-dealer and its owner presented an advice of counsel defense in the context of an SEC disciplinary hearing. The case involved brokerage commissions paid to defendants, to the detriment of the funds they advised. Lipper, 547 F.2d at 175. The same lawyer served as counsel to defendants and one of the funds. That lawyer advised both defendants and the fund that payment of the commissions to defendants was appropriate. Id.

9

The court concluded that defendants' advice of counsel defense failed against the SEC's Rule 10(b)-5 claim, because the lawyer "was not in a position to give petitioners wholly disinterested advice and petitioners could not have reasonably have thought that he was. . . . [The lawyer] was counsel for [the owner of the broker-dealer] and his primary concern lay, as petitioners must have known, in promoting its interests. . . ." Id. at 181-82.

The facts here are not similar to those in Papilsky or Lipper. The stark economic conflict seen in those cases is not present here. Moreover, in Lipper, the court found that the defendants should have realized that their lawyer had a strong motive to provide advice that favored them, to the detriment of the other client. Here, in contrast, the Commission offers no argument as to why (1) the Defendants' interests and the Fund's interests would have diverged with respect to public communications on September 15 and 16, 2008, or with respect to a possible credit support agreement; or (2) Defendants should have understood that Willkie was not in a position to give them disinterested advice, and would likely give advice that favored Defendants.[4]

The Court will not preclude Defendants' advice of counsel defense on the ground that Crowley and Willkie were not disinterested.

## II.     THE COURT WILL NOT ORDER PRODUCTION OF THE "WILMER MEMOS"

While the Commission concedes that legal memoranda prepared by Wilmer in the course of its representation of Defendants would be protected by the work product privilege, the Commission argues that "Wilmer waived that privilege when it gave the memos to Willkie." (Dec. 16, 2011 SEC Advice of Counsel Br. at 14). Defendants deny that any waiver took place, because – at the time Wilmer provided its memos to Willkie – Willkie was serving as

---

[4] The gist of RMCI's malpractice complaint is, of course, that Willkie sacrificed its interests in favor of the Fund's interests. (Dec. 16, 2011 Birnbaum Decl., Ex. J (Malpractice Complaint))

10

Defendants' counsel under "an oral joint defense agreement" with Wilmer. (Martin Decl. ¶ 3) The record indicates that Wilmer and Willkie jointly represented Bent Sr., Bent II, and other RMCI personnel during the SEC's investigation in October and November 2008. See Bent II Decl. in Opposition to SEC's Motion to Preclude Advice of Counsel Defense at ¶¶ 3-4, Ex. C; Bent Sr. Decl. in Support of SJ, Ex. B at 4.

In its malpractice action, RMCI claims that Willkie's simultaneous representation of RMCI and the Fund presented a conflict of interest. (Dec. 16, 2011 Birnbaum Decl., Ex. J (Malpractice Complaint)) ¶¶ 24, 30, 35) Based on this assertion, the Commission argues that Willkie was in an adversarial position vis a vis RMCI during its period of representation, that Wilmer should have known that Willkie had interests at least potentially adverse to RMCI, and that by sharing its memos with Willkie, Wilmer waived the work product privilege.

"The work product privilege is not automatically waived by disclosure to third parties." In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001) (citing In re Pfizer Inc. Securities Litigation, No. 90 Civ. 1260, 1993 WL 561125 at *6 (S.D.N.Y. Dec. 23, 1993)). "Courts find a waiver of work-product immunity only if the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" Id. (quoting In re Grand Jury, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)). "Disclosure of work product to a party sharing common interests is not inconsistent with the policy of privacy protection underlying the doctrine." Id. (citing Stix Products v. United Merchants & Manufacturers, 47 F.R.D. 334, 338 (S.D.N.Y.1969) ("The work product privilege should not be deemed waived unless the disclosure is inconsistent with maintaining secrecy from possible adversaries."); see also SR Intern. Business Ins. Co. Ltd. v. World Trade Center Properties, No. 01 CIV. 9291(JSM), 2002 WL 1455346, at *9 (S.D.N.Y. July 3, 2002)

11

("disclosure to persons outside the attorney-client relationship waives the protection of the [work product] privilege only if the disclosure is to an adversary, or materially increases the likelihood of disclosure to an adversary.") Indeed, where the disclosing party and the recipient party share a common interest, courts generally find no waiver of the work product privilege. Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004).

"[T]he common interest rule is concerned with the relationship between the transferor and the transferee at the time that the confidential information is disclosed. The fact that the parties' interests have diverged over the course of the litigation does not necessarily negate the applicability of the common interest rule." In re United Mine Workers of Am. Employee Ben. Plans Litig., 159 F.R.D. 307, 313 (D.D.C.1994); see Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *7-8 (S.D.N.Y. Oct. 2, 2008) ("The fact that the parties are currently adverse in a related action does not alter the fact that [they] shared a common interest at the time the communications were made.").

No waiver occurred here. At the time the memos were shared, Willkie and Wilmer were working together in the defense of RMCI, related entities, and the Bents in connection with the SEC investigation, and both had ethical obligations to these clients. (Martin Decl. ¶ 3) The fact that Defendants later claimed that Willkie had a conflict of interest does not alter the fact that at the time Wilmer provided its memos to Willkie, both firms had a common interest in providing legal representation to RMCI, related entities, and the Bents. In re United Mine Workers, 159 F.R.D. at 313. The "exchange of work product among attorneys with identical litigation perspectives [does] not render such tangible information 'vulnerable to pre-trial discovery.' . . . As long as the information is being prepared in anticipation of litigation, and

12

the disclosure to co-parties is made in pursuit of preparation for trial and is not inconsistent with maintaining secrecy from their adversary, a waiver of the work product doctrine should not be considered." Lugosch v. Congel, 219 F.R.D. 220, 240 (N.D.N.Y. 2003) (applying joint defense privilege to work product material) (citing Transmirra Prod. Corp. v. Monsanto Chem. Co., 26 F.R.D. 572, 578 (S.D.N.Y. 1960)). In sharing its interview memoranda with Willkie, Wilmer did nothing to increase the likelihood that they would be shared with the Commission, or any other adverse party.

In the alternative, the Commission seeks production of the memo quoted in Willkie's answer in the malpractice action. See Dec. 16, 2011 SEC Advice of Counsel Br. 15. The Court will not order that the memo quoted in Willkie's answer be produced in its entirety. The Commission has had ample opportunity to learn what legal advice RMCI, related entities, and the Bents received from Willkie (and Crowley), having deposed all the relevant parties. See, e.g., Jacobs Decl., Exs, J, K, L.

## CONCLUSION

For the reasons stated above, the Commission's motion in limine No. 4 is denied in its entirety.

The Clerk of the Court is ordered to terminate the motions (Dkt. Nos. 439, 508).

Dated: New York, New York
       September 12, 2012

SO ORDERED.

*Paul G. Gardephe* (signature)
Paul G. Gardephe
United States District Judge

13